## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **TEKNEK, LLC,** | ) | |
| | ) | |
| Debtor, | ) | |
| _____ | ) | **No. 07 C 5229** |
| | ) | |
| **PHILLIP D. LEVEY,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **SYSTEMS DIVISION, INC.,** | ) | **Bankruptcy No. 05 C-27545** |
| | ) | **Adversary Case No. 07-00583** |
| Defendant/Appellee. | ) | **(Bankruptcy Judge Jacqueline P. Cox)** |

## MEMORANDUM OPINION AND ORDER

Teknek, LLC ("Teknek") was found guilty of willful patent infringement in August 2004 and filed for bankruptcy in July 2005. The bankruptcy court has enjoined Systems Division, Inc. ("SDI")–the entity whose patents Teknek infringed–from collecting its patent infringement judgment from Teknek, its owners, and certain affiliated entities, all of whom are judgment debtors. SDI appeals this injunction and, for the reasons set forth below, the court vacates the injunction, except insofar as proceedings are stayed against Teknek pursuant to the automatic stay provision of the Bankruptcy Code. The case is remanded to the bankruptcy court for further proceedings.

## BACKGROUND

### I.    Patent Proceedings

The conflict that gives rise to this litigation began more than seven years ago. SDI filed patent infringement claims against Teknek and Teknek Electronics, Ltd. ("Electronics") in the United States District Court for the Central District of California on February 7, 2000. *Sys. Div., Inc. v.*

*Teknek Elecs. Ltd.*, Case No. 00-cv-135-DOC-AN (C.D. Cal.).[1]  Four and a half years later, SDI's claims were tried before a jury, which found that Teknek and Electronics had committed patent infringement.  On August 18, 2004, District Judge David O. Carter entered a judgment in favor of SDI and against Teknek and Electronics for willful patent infringement.  (00-cv-135 Docket Entry No. 251.)  SDI was awarded $3 million plus prejudgment interest and costs.  (*Id.*)  On November 5, 2004, the court entered an order awarding SDI prejudgment interest totaling $771,555.25.  (00-cv-135 Docket Entry No. 289.)

SDI ran into difficulties protecting and collecting the $3.8 million judgment.  On January 20, 2005, SDI filed an application and order for appearance and judgment debtor examination.  (00-cv-0135 Docket Entry No. 334 at 3.)  On March 7, 2005, Magistrate Judge Arthur Nakazato continued the examination to April 7, 2005.  (*Id.*)  On April 18, 2005, Judge Carter entered an order holding Electronics in contempt for failure to appear at the judgment debtor examination and ordering Electronics to pay reasonable costs and attorneys' fees incurred by SDI as it attempted to enforce the judgment.  (*Id.* at 7.)  As Teknek had not been served with a notification of the examination, Teknek was not held in contempt.  (*Id.* at 6.)  The court also enjoined Electronics from carrying on business in the United States or "transferring or disposing of any of their assets (including monetary assets) to any other Defendant or any third party, or from transferring any assets (including monetary assets) out of the United States."  (*Id.* at 7-8.)  This injunction was to remain in place until Electronics appeared for a judgment debtor examination.  (*Id.* at 8.)

After SDI filed its patent infringement claims but before the final judgment was filed, the judgment debtors–Teknek and Electronics–transferred their assets to a third entity: Teknek Holdings, Ltd. ("Holdings").  In June 2005, SDI moved to add Jonathan Kennett, Sheila Hamilton,

---

[1]     Citations to motions and orders in the patent infringement case will refer to the electronic docket available online and be styled "00-cv-135 Docket Entry No. __."  Following the same format, the court will also cite to the electronic docket of the relevant bankruptcy cases.

and Holdings as judgment debtors. (00-cv-135 Docket Entry No. 486 at 4.) Kennett and Hamilton are Scottish citizens. (*Id.* at 3.) Kennett owns 85% of Teknek and Holdings; Hamilton owns the remaining 15% of each entity. (*Id.* at 2-3.) Electronics is now a wholly-owned subsidiary of Holdings but, before it became a Holdings subsidiary, it also was wholly owned by Kennett (85%) and Hamilton (15%). (*Id.* at 2.) Judge Carter found that Holdings was formed in April 2000, that is, approximately two months after SDI filed its patent infringement lawsuit against Teknek and Electronics. (*Id.* at 2.) Nearly all of Teknek's and Electronics' assets were transferred to Holdings once it was formed, rendering both Teknek and Electronics insolvent. (*Id.*) Judge Carter found that the fraudulent transfers of assets from entities wholly controlled by Kennett and Hamilton (Teknek and Electronics) to another company wholly controlled by Kennett and Hamilton (Holdings)–indeed, entities controlled in the same 85-15 ratio–deprived SDI of its ability to collect its judgment from Teknek and Electronics. (00-cv-135 Docket Entry No. 486 at 15-18.) Judge Carter also found that to add Holdings, Kennett, and Hamilton as judgment debtors would not offend due process, given the control they had over litigation of the patent proceedings. (*Id.* at 18-21.) On January 3, 2007, he ordered that Holdings, Kennett, and Hamilton be added as judgment debtors in the patent infringement action under either a theory of alter ego or of successor liability. (*Id.* at 2-3.)

Holdings, Kennett, and Hamilton appealed this order to the Federal Circuit, which affirmed Judge Carter. *Sys. Div.*, 2007 WL 3151697, at *1. The Federal Circuit found that Teknek "sold" all of its assets to Holdings in 2004, and that there is no evidence that Teknek received any compensation for that sale. *Id.* Electronics also transferred its assets to Holdings, and there is no evidence that Teknek received any compensation for doing so. *Id.* Ultimately, Electronics became a wholly owned subsidiary of Holdings, although the Federal Circuit's opinion does not say precisely when this occurred. *Id.* Electronics paid "dividends" to Holdings, including a £3.5 million dividend

in 2003 (shortly after a grant of summary judgment for the defendants was reversed)[2] and a £1.5 million dividend in 2004 (shortly before the jury verdict in favor of the plaintiff). *Id.* The Federal Circuit therefore affirmed the order adding Kennett, Hamilton, and Holdings as parties to the 2004 verdict and judgment of infringement on the theory that they fraudulently transferred assets from Teknek and Electronics to themselves, thereby preventing SDI from collecting its patent infringement judgment. *Id.*

Following the transfer of assets from Teknek and Electronics to Holdings, Teknek and Electronics were insolvent. (00-cv-135 Docket Entry No. 486 at 2.) On May 26, 2005, Electronics, a Scottish company, filed an insolvency petition in the United Kingdom, and Teknek filed its Chapter 7 bankruptcy petition in the United States on July 12, 2005. (*Id.* at 3; *see also Sys. Div., Inc. v. Teknek Elecs., Ltd.*, No. 2007-1162, 2007 WL 3151697, at *1 n.1 (Fed. Cir. Oct. 26, 2007).) Electronics' bankruptcy proceedings are not at issue in this appeal, which is focused solely on the Teknek bankruptcy proceedings before Bankruptcy Judge Jacqueline P. Cox. Teknek and Electronics made Judge Carter aware of their bankruptcy filings and, on August 1, 2005, Judge Carter stayed all proceedings and pending motions in the patent infringement matter. (00-cv-135 Docket Entry No. 459.) Without articulating his reasons for doing so, Judge Carter lifted the stay on October 5, 2006, at SDI's request. (00-cv-135 Docket Entry No. 470.) Only after Judge Carter lifted the stay did he add Holdings, Kennett, and Hamilton as judgment debtors.

While the Federal Circuit appeal was pending, SDI continued its attempts to collect on the $3.8 million judgment. SDI moved to hold defendants in contempt for violating court orders relating to the failure to pay the judgment or cooperate with judgment debtor examinations on April 6, 2007; because defendants' counsel advised the court that defendants had agreed to pay the outstanding

---

[2]     In September 2001, Judge Carter granted summary judgment motion for defendants on the ground of patent invalidity. (00-cv-135 Docket Entries No. 121 & 122.) SDI appealed that order (00-cv-135 Docket Entry No. 125), and the Federal Circuit reversed and remanded in February 2003 (00-cv-135 Docket Entry No. 138.)

judgment, Judge Carter continued the hearing on the motion to July 23, 2007. (00-cv-135 Docket Entry No. 525.) In June 2007, while that contempt motion was pending, Teknek's Trustee in bankruptcy filed an adversary proceeding against SDI, seeking to recover the assets Teknek transferred before it became insolvent. (07-ap-583 Docket Entry No. 1.) On June 26, Judge Cox issued a preliminary injunction, prohibiting SDI from prosecuting claims or collecting on account of claims from Teknek, Hamilton, Kennett, and "the Teknek parties." (07-ap-583 Docket Entry No. 13.) While Teknek's bankruptcy proceedings will be discussed in more depth below, it is clear that this preliminary injunction implicated SDI's attempts to collect its patent infringement judgment from the judgment debtors. Nevertheless, SDI continued its attempts to collect. On July 17, 2007, Judge Carter again placed the proceedings on hold, this time until September 10, 2007. (00-cv-135 Docket Entry No. 540.) In his order granting another continuance, Judge Carter noted that the bankruptcy court had entered a preliminary injunction barring SDI from collecting its judgment, and that settlement discussions between Holdings and the Teknek Trustee were underway. (*Id.*) On September 10, Judge Carter continued the hearing until September 25, 2007 and issued a tentative order holding the five defendants in contempt. (00-cv-135 Docket Entry No. 549.)[3] Four days later and following a teleconference with the bankruptcy judge and attorneys in Illinois in which he learned that the bankruptcy judge had modified the injunction in place, he issued a revised version of that tentative order. (00-cv-135 Docket Entry No. 546.)

On October 3, 2007, SDI requested that Judge Carter and the Northern District of Illinois consult to clarify the bankruptcy court's jurisdiction. (00-cv-135 Docket Entry No. 552.) Holding that the appeal currently before this court is the proper avenue for SDI to pursue, Judge Carter denied this request on October 12. (00-cv-135 Docket Entry No. 561.) On the same day, Judge Carter held Holdings, Kennett, and Hamilton in contempt, issuing an expanded version of his amended

---

[3]     The tentative order is not in the record, but there is no indication that it is substantively different from the subsequent tentative and final order.

tentative order.  (00-cv-135 Docket Entry No. 563 at 22.)  His final order expressly examined the jurisdiction of the bankruptcy court to enjoin proceedings in the Central District of California, which the tentative order had not; ultimately, however, the order imposed the same sanctions contemplated in the amended tentative order.  (*Id.*; *see also* 00-cv-135 Docket Entry No. 546.)  In his contempt order, Judge Carter declined to exercise his power under the All Writs Act, 28 U.S.C. § 1651(a) but made clear that he would exercise this power to enjoin attempts to enforce the bankruptcy court's injunction in his court.  (00-cv-135 Docket Entry No. 563 at 16.)  By way of sanctions, he enjoined the judgment debtors–Teknek, Electronics, Holdings, Kennett, and Hamilton–from carrying on business within the United States, from transferring assets to any other defendant or third party, and from transferring any assets out of the United States.  (*Id.* at 22.)  He imposed these same restrictions on Teknek Manufacturing Ltd., Teknek Japan Ltd., Teknek China Ltd., Teknek Howwood Ltd., Teknek Automation A/S, Teknek Asia Ltd., Teknek Europe Ltd., and Kenham LLC.  (*Id.*)[4]  These injunctions were to remain in effect until Holdings appeared for a judgment debtor examination and provided SDI with certain documents.  (*Id.* at 23.)  Finally, he ordered Holdings, Kennett, and Hamilton to provide SDI with certain information about the various Teknek entities, including a list of all employees, officers, directors, agents, representatives, and licensees; an accounting of revenue and accounts receivable; and customer lists.  (*Id.*)  On November 9, 2007, the Teknek Trustee as well as Holdings, Kennett, and Hamilton filed notices of

---

[4]     Judge Carter referred to these various companies as the "Teknek Entities," but the precise relationship among them is not clear.  In adversary proceedings filed before the bankruptcy court in 2006, the Trustee has alleged that Holdings is the holdings company under whose umbrella Teknek Manufacturing Ltd., Teknek Japan Ltd., Teknek China Ltd., Teknek Howwood Ltd., Teknek Asia Ltd., and Teknek Europe Ltd. operate.  (06-ap-412 Docket Entry No. 63 ¶ 16 n.1.)  Kenham is a successor company to Teknek.  The Trustee alleges that Teknek's business essentially reopened, after it was divested of its valuable assets and ceased operations, as a new entity called Teknek America.  (*Id.* ¶ 32.)  Teknek America, LLC changed its name to Kenham, LLC after selling all of its assets (other than its accounts receivable), and any money owed to Teknek America is paid to Kenham, LLC.  (*Id.* ¶ 14.)  Teknek Automation A/S is not specifically mentioned in the adversary proceedings.

appeal. (00-cv-135 Docket Entries No. 576 & 578.) Their appeals are currently pending before the Federal Circuit.

## II.    Bankruptcy Proceedings

As described briefly above, in the wake of the $3.8 million patent infringement judgment, Teknek filed for voluntary bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois on July 12, 2005, Bankruptcy Case No. 05-27545. (Brief of Appellee Phillip D. Levey, Trustee in Bankruptcy for the Estate of Teknek, LLC ("Levey Br.") at 4; Brief of Appellant, Systems Division, Inc. ("SDI Br.") at 3.) Teknek's bankruptcy proceedings are currently pending before Bankruptcy Judge Cox. In the bankruptcy proceedings, Teknek disclosed $73.22 in assets and $3.79 million in liabilities. (SDI Br. at 3.) Lawrence Fisher was appointed as the original bankruptcy trustee. (Levey Br. at 4-5.)[5] On July 20, 2005, SDI, through its attorneys, filed an appearance in the bankruptcy court. (*Id.* at 5.) On February 1, 2006, SDI filed a claim for $3,823,564.90 in the bankruptcy proceedings. (*Id.*; Systems Division, Inc. Proof of Claim, Ex. 25 to Levey Br. at Ex. A.)

In addition to the Teknek bankruptcy case, there are two associated adversary proceedings pending before Judge Cox. On January 19, 2006, Fisher, as Teknek Trustee, initiated adversary proceedings against a number of individuals and entities, including Kennett, Hamilton, and Holdings, *see* Adversary Proceeding No. 06-412. In that action, the Teknek Trustee seeks to recover the assets fraudulently transferred by Teknek in an attempt to avoid paying the judgment owed to SDI. After Fisher resigned as the Teknek Trustee for medical reasons on May 31, 2006, Phillip D. Levey was appointed the successor trustee for the Teknek estate. (Levey Br. at 6.) Levey commenced adversary proceedings against SDI on June 22, 2007, Adversary Proceeding No. 07-00583. (Levey Br. at 8.) Levey sought, among other relief, a preliminary and a permanent

---

[5]    The Trustee makes much of the fact that the same lawyers represented Fisher and SDI. (Levey Br. at 5-7.) But the court is uncertain of how, if at all, this alters the facts of this appeal.

injunction enjoining SDI from collecting or otherwise pursuing collection of the patent infringement judgment from Kennett, Hamilton, and Holdings. (*Id.*) The court granted the Teknek Trustee's motion for a preliminary injunction on June 26, and on June 29, 2007 entered an order enjoining SDI from collecting or taking any action against: Teknek, Hamilton, Kennett, Holdings, Electronics, and certain Teknek affiliates: Teknek America, LLC; Kenham, LLC; and Tekena, LLC. (*Id.* at 8-9; SDI Br. at 5.) The preliminary injunction remained in effect until July 27, 2007. (Levey Br. at 8-9.)

A few weeks before the preliminary injunction was set to expire, SDI moved to modify its terms. (SDI Br. at 5.) On July 13, 2007, Judge Cox extended the injunction through August 28, 2007 and continued SDI's motion to modify the preliminary injunction order until that same date. (*Id.* at 5.) On August 21, 2007, the Teknek Trustee moved for a permanent injunction and for authority to compromise. (SDI Br. at 6.) The Trustee argued that Holdings would satisfy the outstanding patent infringement judgment if and only if a permanent injunction were issued preventing SDI and anyone affiliated with SDI from collecting or otherwise pursuing collections of that judgment. (*Id.*) SDI countered that Holdings' proposed payment would not fully satisfy the judgment. (*Id.*) Judge Cox noted that SDI never appealed the June 29, 2007 order granting the preliminary injunction; SDI agreed to the extension of the preliminary injunction to August 28, 2007; and there had been no material changes to the facts or circumstances surrounding the first motion for a preliminary injunction. (07-ap-583 Docket Entry No. 78 at 4.) Thus, Judge Cox extended the preliminary injunction to and through November 27, 2007. (*Id.*) On September 5, SDI filed a Notice of Appeal with this court.

## DISCUSSION

### I.     Jurisdiction

SDI appeals the bankruptcy court's entry of the June 29, 2007 and August 28, 2007 preliminary injunction orders. SDI suggests that the court's jurisdiction is grounded in 28 U.S.C. § 158(a)(1), which entrusts district courts with jurisdiction to hear appeals "from final judgments,

orders, and decrees." In non-bankruptcy proceedings, appeals of the grant of preliminary injunctions are considered interlocutory. 28 U.S.C. § 1292(a)(1); *Duct-O-Wire Co. v. United States Crane*, 31 F.3d 506, 508 (7th Cir. 1994). In bankruptcy proceedings, however, courts construe finality more liberally than in non-bankruptcy proceedings. *In re Forty-Eight Insulations*, 115 F.3d 1294, 1299 (7th Cir. 1997). Thus, the Ninth Circuit has recently held that an injunction staying arbitration proceedings is appealable as a final order. *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1092 (9th Cir. 2007).

This court will, however, review the preliminary injunction even if it does not technically constitute a "final order" – that is, one which, even under the broader definition appropriate in the context of a bankruptcy appeal, "ultimately determine[s] a creditor's position in the bankruptcy proceeding." *Forty-Eight Insulations*, 115 F.3d at 1299. Even if the preliminary injunction at issue here does not ultimately determine SDI's position in the bankruptcy proceeding, this court may exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(3). *Id.* ("the district court may choose to take jurisdiction from interlocutory orders of bankruptcy courts"). Particularly given that a dispute has arisen between a District Judge in the Central District of California and a Bankruptcy Judge in the Northern District of Illinois, exercise of the discretionary jurisdiction is both appropriate and necessary. There is no dispute that SDI followed the proper procedures for appealing the interlocutory order and, thus, the court has jurisdiction over this appeal.

## II.     The Bankruptcy Court's Injunction

### A.     Standard of Review

When reviewing the bankruptcy court's determination that Teknek was entitled to a preliminary injunction, the court reviews the bankruptcy "court's findings of fact for clear error, its balancing of the factors for a preliminary injunction under the abuse of discretion standard, and its legal conclusions *de novo*." *Bhd. of Maint. of Way Employees v. Union Pac. R.R. Co.*, 358 F.3d 453, 457 (7th Cir. 2004) (articulating the standard in context of reviewing district court's grant or

denial of a preliminary injunction).

**B.      Enjoining Proceedings Against Teknek**

It is undisputed that the Bankruptcy Code's automatic stay provision prohibits SDI from collecting on its judgment from Teknek. The Bankruptcy Code provides that a bankruptcy petition "operates as a stay, applicable to all entities, of--(1) the commencement or continuation . . .of a judicial . . . action or proceeding . . . to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a). The language of this provision explicitly extends the "automatic stay provision only to the debtor filing bankruptcy proceedings and not to nonbankrupt co-defendants." *Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314 (7th Cir. 1983) (per curium); *see also Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999) ("the automatic stay does not apply to non-bankrupt co-defendants of a debtor 'even if they are in a similar legal or factual nexus with the debtor.'") (citation omitted) (collecting cases). And indeed, the Trustee makes explicit that he does not disagree with this reading of *Pitts.* (Levey Br. at 17.) Accordingly, the automatic stay prevents SDI from collecting its patent infringement against Teknek. The dispute here is whether the stay–or any other authority afforded to the bankruptcy court–extends to prohibit action as against the other judgment debtors as well.

**C.      Enjoining Proceedings Against Non-Debtors**

**1.      Property of the Estate**

The Trustee acknowledges that "this case does not turn on the scope of § 362(a), but instead involves a § 105(a) injunction issued to protect property of a bankruptcy estate and a trustee's pursuit of a defendant being simultaneously pursued by a creditor" (Levey Br. at 17.) Yet the June 29 Preliminary Injunction Order is based on the bankruptcy court's finding that "SDI's purported claims under the SDI Motion are claims of the Estate." (07-ap-583 Docket Entry No. 14 ¶ Z.) The Order explicitly invokes section 362, stating that the Trustee has good cause for relief because "(a) the Trustee has a substantial likelihood of success on the merits under § 362 and (b)

the preliminary injunction will serve to protect the Estate's interests and will not harm any public interest." (*Id.* ¶ DD.) Based on this evidence, the bankruptcy court enjoined SDI from collecting upon any claims against not only the debtor but also Hamilton, Kennett, and the Teknek Affiliates, defined to include Holdings; Electronics; Teknek America, LLC; Kenham, LLC; and Tekena, LLC. (*Id.* at 8.) Extending that injunction on August 28, 2007, Judge Cox reaffirmed that the Trustee was the proper party to pursue alter ego claims and that "SDI's purported claims . . . are claims of the Estate." (07-ap-583 Docket Entry No. 78 at 4.) Similarly, the Trustee has argued that, by filing claims against Teknek's estate, SDI effectively assigned its claims to the estate. (Levey Br. at 13.)

It is true that a bankruptcy court has exclusive jurisdiction over the property of the debtor's estate. 28 U.S.C. § 1334(e). To begin, then, the court will consider whether SDI's attempts to collect are claims of the debtor's estate. This requires defining the nature of the liability of Holdings, Kennett, and Hamilton as judgment debtors. With regard to enforcing judgments, the Federal Rules provide that "procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." FED. R. CIV. P. 69(a)(1); *see also Cigna Property & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 421 (9th Cir. 1998). Section 187 of the California Code of Civil Procedure empowers California courts to amend the judgment to add additional judgment debtors based on an alter ego theory of liability. *See Levander v. Prober (In re Levander)*, 180 F.3d 1114, 1120-21 (9th Cir. 1999); *Dow Jones Co. v. Avenel*, 151 Cal. App. 3d 144, 148 (Cal. Ct. App. 1984). Where the alter ego doctrine applies, a corporations' shareholders are jointly and severally liable for the entirety of the corporation's debts. *Minn. Mining & Mfg. Co. v. Superior Court*, 206 Cal. App. 3d 1025, 1028 (Cal. Ct. App. 1988); 14 *Ballantine and Sterling, Cal. Corp. Laws* § 299.06. Indeed, the Trustee acknowledges that Holdings, Kennett, and Hamilton are "jointly and severally liable for the full amount of the underlying Judgment. That, of course, is the whole point of alter ego liability." (Levey Br. at 14.) Thus, Electronics, Holdings, Kennett, and

11

Hamilton are judgment debtors directly liable for the $3.8 million judgment. *See Bd. of Trustees v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000) ("Efforts to pierce the corporate veil ask a court to hold A vicariously liable for B's debt. . . . But a contention that A is B's 'alter ego' asserts that A and B are the same entity; liability then is not vicarious but direct.").

In light of this, SDI's collection claims are not property of the Teknek estate for two reasons. First, the Seventh Circuit has held that a creditor's claims are not part of the bankruptcy estate where the claims seek to remedy harm to the creditor and no other claimant or creditor has an interest in the cause. *Fisher v. Apostolou*, 155 F.3d 876, 879 (7th Cir. 1998), quoting *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1348 (7th Cir. 1987). SDI does not seek to recover assets wrongfully transferred from the debtor to Holdings, Kennett, and/or Hamilton. Rather, SDI seeks to collect its patent infringement judgment directly from Electronics, Holdings, Kennett, and Hamilton. That patent infringement judgment remedies a harm unique to SDI, and no other creditor has an interest in that judgment. *See id.* at 879-81. Electronics, Holdings, Kennett, and Hamilton are directly liable to SDI for the patent infringement judgment, and neither Teknek nor any claimant or creditor has any interest in that judgment. Thus, SDI's claims are personal and do not belong to the estate. *See id.*

Second, Judge Carter employed section 187 and held Holdings, Kennett, and Hamilton liable as judgment debtors "in large part" because of the fraudulent transfers involving Electronics. (00-cv-135 Docket Entry No. 563 at 11 n.6.) The Trustee claims to be the owner of an alter ego claim "against the Alter-Egos" (Levey Br. at 24), but the Electronics bankruptcy proceedings are not before Judge Cox or in any way related to the Teknek bankruptcy proceedings. Thus, the Trustee cannot own alter ego claims involving Electronics' fraudulent transfers. *See Wayne Film Sys. Corp. v. Film Recovery Sys. Corp.*, 64 B.R. 45, 50 (N.D. Ill. 1986) ("a trustee does not stand in the shoes of the bankrupt's creditors for all purposes. Rather, if a creditor has a claim against a third party, however that third party may be related to the bankrupt, the trustee has no standing to pursue that

creditor's claim against the third party, even if the claim is common to many creditors."). Even if the Trustee "owns" alter ego claims involving Teknek, SDI retains independent claims reduced to judgment by Judge Carter. Thus, the Trustee's ownership of certain alter ego claims does not render all of SDI's collection attempts property of the estate.

## 2.    Related-to Jurisdiction

Although, as noted, the bankruptcy court appears to invoke section 362, the Trustee argues that section 105 of the Bankruptcy Code, as opposed to section 362, authorizes the injunction. (Levey Br. at 17.)  Indeed, the bankruptcy court did rely at least in part on section 105 when granting the preliminary injunction.  (07-ap-583 Docket Entry No. 14 ¶ DD.)  Congress has empowered bankruptcy courts, to whom bankruptcy cases are referred pursuant to 28 U.S.C. § 157(a), to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105. Section 105, however, does not provide an independent source of subject matter jurisdiction. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 224-25 (3d Cir. 2004).  Instead, the bankruptcy court's jurisdiction is determined by Congress. *See Kontrick v. Ryan*, 540 U.S. 443, 452 (2004).  Where a bankruptcy case is pending, the court has non-exclusive jurisdiction over all civil proceedings arising under and related to cases under title 11.  28 U.S.C. § 1334(b).  Thus, a bankruptcy court may, under certain circumstances, temporarily enjoin non-debtors from bringing certain claims.  In this case, the question is whether SDI's attempts to collect from Electronics, Holdings, Kennett, and Hamilton are sufficiently "related to" the bankruptcy proceedings that the bankruptcy court has jurisdiction to stay them.

In the Seventh Circuit, the definition of the bankruptcy court's "related to" jurisdiction is limited.  *In re FedPak Sys.*, 80 F.3d 207, 213 (7th Cir. 1996).  As explained in *FedPak*, "[a] case is related to a bankruptcy when the dispute affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors."  *Id.* at 213-14 (internal quotation marks and citations omitted).  Interpreting "related to" jurisdiction narrowly respects Article III,

reflects principles of comity among the courts, and is good common sense. *Id.* at 214. Thus, only "[i]n limited circumstances" do bankruptcy judges temporarily block adjudication of those claims that "may affect the amount of property in the bankrupt estate" or "the allocation of property among creditors." *Fisher*, 155 F.3d at 882 (citations omitted); *cf. Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995) (related-to jurisdiction is a grant of "some breadth" but "cannot be limitless").

In reasoning that the bankruptcy court had related-to jurisdiction, the Trustee focuses primarily on *Fisher*, a case that he contends is analogous to this dispute. In *Fisher*, a group of investors were defrauded by a corporation and an individual, each of whom later became insolvent and filed for bankruptcy. *Fisher*, 155 F.3d at 878. The defrauded investors then filed fraud suits against certain accomplices to the debtors in bankruptcy. *Id.* The bankruptcy court enjoined the investors' lawsuits, finding that the claims were the property of the debtors' estates and therefore covered by the automatic stay provision as well as under section 105. *Id.* at 879. The district court vacated the injunction, holding that the investors' claims were not property of the bankrupt estates and that the trustee did not have standing to assert them. *Id.* The district court further held that, as a party to the fraud, the debtor (through its trustee) could not bring suit against the accomplices. *Id.* On appeal, the Seventh Circuit agreed that the investors' claims were not part of the debtors' estates. *Id.* at 883. It nevertheless reinstated the injunction based on related-to jurisdiction. *Id.* It held that the investors were redressing "identical, if individual, harms." *Id.* at 881. The Seventh Circuit held that the investors' claims, which implicated "the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy," were related to the bankruptcy estate and thus fell within the bankruptcy court's jurisdiction. *Id.* at 882.

While *Fisher* does set out the governing principles in this appeal, this case is factually different in several important ways. In *Fisher*, there were 244 investors suing in their individual capacities, and approximately 450 similarly situated individuals. *Fisher*, 155 F.3d at 878. Here, SDI

stands alone; there are no similarly situated parties and no identical harms inflicted by the debtor. Thus, the bankruptcy court need not allocate assets among similarly situated entities. In *Fisher*, the debtors, who had operated a Ponzi scheme, had only about $2 million of the $100 million taken in when they filed for bankruptcy. *Id.* The Ponzi scheme was the subject matter of the investors' lawsuit as well as the force driving the debtors into bankruptcy. *Id.* Here, the wrongful conduct underlying SDI's lawsuit was willful patent infringement, and the fraud perpetrated by Teknek was merely an attempt to avoid paying the judgment it owed SDI. In other words, Teknek's fraud was not the same underlying wrong remedied by SDI's substantive claims. SDI's claims are for patent infringement, not alter ego. Indeed, Holdings, Kennett, and Hamilton are directly responsible for the judgment entered against Teknek and Electronics. These differences go to the heart of the bankruptcy court's jurisdiction, because they impact the relatedness of SDI's claims to the bankruptcy estate at issue.

This case is also not *Celotex*. In that case, respondents had filed suit in the District Court for the Northern District of Texas against petitioner, Celotex, and others for alleged asbestos-related injuries. *Celotex*, 514 U.S. at 302. A judgment was entered for respondents, and Celotex posted a supersedeas bond with a surety. *Id.* Celotex then filed for bankruptcy in the Bankruptcy Court for the Middle District of Florida before respondents could collect on their judgment. *Id.* The Florida bankruptcy court issued an injunction pursuant to section 105, which stayed all proceedings involving Celotex. *Id.* at 303. The Texas district court nevertheless permitted respondents to execute against the surety on the bond, and the Fifth Circuit affirmed. *Id.* at 304-05. Before the Supreme Court, respondents acknowledged that the Florida bankruptcy court's injunction prohibited them from executing against the surety on the bond posted by Celotex, but challenged the jurisdiction of the bankruptcy court to enter the injunction. *Id.* at 306-07. The Supreme Court noted that the bankruptcy court asserted related-to jurisdiction because allowing the respondents and 227 other bonded judgment creditors to execute on the bonds would affect Celotex's ability to undergo

a successful reorganization in Chapter 11 bankruptcy proceedings. *Id.* at 310. Here, there are not hundreds of creditors seeking to recover, nor a Chapter 11 bankruptcy proceeding involving a reorganization–this Chapter 7 proceedings is one in which the bankruptcy court's jurisdiction narrower than it was in *Celotex*. *Id.* ("it is relevant to note that we are dealing here with a reorganization under Chapter 11, rather than a liquidation under Chapter 7. The jurisdiction of bankruptcy courts may extend more broadly in the former case than in the latter."). The interests at stake here are different than those in *Celotex*. Moreover, The Supreme Court also found that respondents ought to have challenged the injunction in bankruptcy court and appealed to the district court and ultimately to the Eleventh Circuit rather than collaterally attacking the injunction in the Texas federal courts. *Id.* at 313. Here, SDI has pursued just such a direct appeal. Accordingly, neither *Fisher* nor *Celotex* answers the question of whether the bankruptcy court had jurisdiction.

The court must therefore examine the particular facts of this case to determine whether SDI's collection attempts are related to the estate's claims. It is useful to begin by considering the adversary proceedings the Trustee has brought to recover the fraudulently transferred assets, *In re Teknek*, Adversary Proceeding No. 06-412. There, the Trustee has brought claims against Hamilton and Kennett (as well as four other individuals) and two entities: Tekena USA and Kenham LLC. (06-ap-412 Docket Entry No. 63.) In the Amended Verified Adversary Complaint, the Trustee alleges that Tekena is an Illinois limited liability company that, in September 2005, purchased the assets and name of Teknek America. (*Id.* ¶ 13.) The Trustee also alleges that Kenham is an Illinois limited liability company formed in June 2004 as Teknek America, LLC; upon selling its name and assets (other than accounts receivable) in September 2005, it adopted the name Kenham. (*Id.* ¶¶ 14, 17.) In the adversary proceeding, the Trustee seeks to recover assets fraudulently transferred from Teknek in an attempt to avoid paying the patent infringement judgment owed to SDI. (*Id.* ¶¶ 1-3.) The Trustee has not named Holdings as a defendant in that or any other adversary proceeding that the court can find.

### a. Estate's Ability to Collect

Although SDI's attempts to collect on its patent infringement judgment are not property of the Teknek estate, the question remains whether those transfers are sufficiently "related to" the estate to justify the bankruptcy court's exercise of jurisdiction. The Trustee argues that, if SDI collects against Electronics, Holdings, Kennett, or Hamilton, this would extinguish their debt (if any) to the estate. (Levey Br. at 20.) But as explained above, SDI's patent infringement judgment is a debt separate and distinct from any fraudulent transfer or alter ego claims the estate might have. SDI does not seek to recover the assets Teknek fraudulently transferred to Holdings. Rather, it seeks to recover directly from the judgment debtors the patent infringement claims reduced to judgment by Judge Carter. Electronics, Holdings, Kennett, and Hamilton are liable to SDI on the patent infringement judgment *and*, if proven, to the estate for the fraudulent transfers.

Collection by SDI therefore will not prevent the Trustee from collecting on its claims against Holdings. *See* 47 AM. JUR. 2d *Judgments* § 827 ("Satisfaction against one party does not serve to release other parties from liability on a different debt, obligation, or cause of action."); *In re Better Care, Ltd.*, 97 B.R. 405, 415 (Bankr. N.D. Ill. 1989) (holding that payment of a judgment creates a right to satisfaction, but there may exist "numerous other state or federal causes of action . . . none of which would be preempted or discharged by this judgment."). In other words, Electronics, Holdings, Kennett, and Hamilton are liable to SDI and the Teknek estate (if they are liable to the estate) on different debts, and they may be required to pay both of them. Given that Holdings, Kennett, and Hamilton, on the one hand, and Teknek and Electronics, on the other hand, were deemed indistinguishable by the Central District of California and Federal Circuit at the time the debts were incurred, equity does not preclude this result.

### b. Identifying Teknek Assets

There might be an argument for exercising related-to jurisdiction if each fraudulent transfer implicated Teknek assets. Although it has not been clearly articulated in this appeal, the court

presumes that the Trustee's argument that the bankruptcy court had jurisdiction to enter an injunction as to Electronics is the same as the position he has taken in Adversary Proceeding No. 06-412.  In that proceeding, the Trustee has alleged that Teknek's fraudulent transfers, intended to divest Teknek of any assets, took the forms of monetary transfers to Kennett and Hamilton and transfers of tangible and intangible assets to Teknek-related entities controlled by Kennett and Hamilton.  (06-ap-412 Docket Entry No. 63 ¶¶ 23-24.)  The Trustee describes a scheme in which many of Teknek's assets–including accounts receivables and payables, fixed assets and liabilities, office furniture and other tangible assets, and customer lists–were transferred to Electronics (*id.* ¶¶ 26-29), and then from Electronics to Holdings (*id.* ¶ 30); he contends that the customer list is now being used by Teknek-related entities for which Holdings is the umbrella organization.  (*Id.* ¶ 31.)  In other words, the bankruptcy court has found that the scheme of fraudulent transfers included transfers to each of the judgment debtors.  This suggests that the bankruptcy court ought to be given the opportunity to untangle the transfers and identify the assets that are properly part of the estate.

Indeed, the preliminary injunction order is based on a finding that Teknek transferred "all of its assets to Electronics, who then transferred the assets to various companies either owned or controlled by Hamilton and Kennett."  (07-ap-583 Docket Entry No. 14 ¶ N.ii.)  The order reads:

> M.      On January 5, 2007, the District Court [for the Central District of California] entered an order (the "SDI Order") granting the SDI Motion [to add Hamilton, Kennett, and Holdings as defendant parties to the SDI Judgment].

> N.      In the SDI Order, the District Court found, among other things that: . . . .

> > ii.      sometime during the period 2003-2004, either while the Patent Case was pending or following the entry of the SDI Judgment, the Debtor accomplished the transfer of all of its assets to Electronics, who then transferred the assets to various companies either owned or controlled by Hamilton and Kennett, including Holdings, Teknek America, LLC, Kehnam [sic], LLC and Tekena, LLC (collectively with

Electronics, the "Teknek Affiliates"): [6]

(*Id.* ¶¶ M-N.)  In other words, the preliminary injunction order explicitly attributes these factual findings are explicitly attributed to Judge Carter.

Judge Carter had an opportunity to respond to the bankruptcy court's understanding of his factual findings.  (*See* 00-cv-135 Docket Entry No. 563 at 7 n.3.)  Judge Carter cautioned that the bankruptcy court's order "disturbingly misrepresents" his findings of fact, and this court agrees.  (*Id.*)  First, Judge Carter never found that Teknek's assets were transferred from Teknek to Electronics and then to Holdings; he found, to the contrary, that both Teknek's and Electronics' assets were transferred *directly* to Holdings.  (*Id.*)  This is significant, because if Teknek's assets were transferred to Electronics rather than directly to Holdings, this would imply that the assets transferred to Holdings were all, originally, Teknek assets and that none were, originally, Electronics assets.  (*Id.*)  In other words, it would suggest that all of Holdings' assets came from Teknek.  (*Id.*)  This, however,  is "patently false."  (*Id.*)

What Judge Carter's Order actually finds is: "In 2004, Defendant Teknek LLC 'sold' all of its assets to Teknek Holdings.  This transfer included the Teknek trademark . . . ."  (00-cv-135 Docket Entry No. 486 at 3.)  The Federal Circuit made the same finding of fact: "Teknek LLC did not become a subsidiary of Teknek Holdings, but in 2004, it 'sold' all of its assets to Teknek Holdings, including the Teknek trademark. There is no evidence to suggest that Teknek LLC received any compensation for the assets that it transferred to Teknek Holdings."  *Sys. Div.*, 2007 WL 3151697, at *1.[7]  In 2003, Electronics paid a £3.5 million dividend to Holdings in 2003 and a

---

[6]        The Teknek Trustee admits that these factual statements in Judge Cox's order were taken "directly" from his avoidance complaint.  (Levey Br. at 21.)  He contends before this court that these statements were intended as a recitation of that complaint rather than a characterization of Judge Carter's ruling.  (*Id.*)  But the clear language of the Order indicates otherwise (07-ap-583 Docket Entry No. 14 ¶ N), and this court rejects the Trustee's characterization.

[7]        Judge Carter also points out that his Order makes clear that both Teknek and Electronics transferred assets to Holdings with actual intent to defraud SDI.  (00-cv-135 Docket

£1.5 million dividend to Holdings in 2004 but received nothing in exchange for either dividend. (00-cv-135 Docket Entry No. 486 at 2-3.) Electronics transferred its building to Holdings in 2003 and sold all of its assets to Holdings (though it is not clear when); Electronics received no check in exchange for the asset transfer. (*Id.*) The Federal Circuit made similar findings that Electronics paid dividends to Holdings, that Electronics transferred its assets and building to Holdings, and that there is no evidence that Electronics received any compensation in exchange for the asset transfers. *Sys. Div.*, 2007 WL 3151697, at *1. But there is no indication in either opinion that the Teknek assets passed through Electronics or that Electronics did not, originally, own the assets it transferred to Holdings.

Both parties presented factual evidence to the Central District of California and the Federal Circuit. Nevertheless, the Trustee now contests the version of events set forth by those courts. He focuses on the language of a Settlement Agreement, never actually adopted by the parties, to the effect that Teknek sold most of its assets to Electronics, and the statement of an SDI officer that "[t]o my knowledge, none of the assets of Teknek LLC were transferred directly to Teknek Holdings." (Levey Br. at 21-22; Korbonski Decl. ¶ 4, Ex. 37 to Levey Br.) This is not sufficient to persuade the court to revisit the issue. In light of the clear findings by both courts to consider the issue, the court is not inclined to entertain conflicting, unsubstantiated allegations of fact. Absent any real evidence to contradict prior findings of fact, the court will not disturb them here. Teknek's fraudulent transfers did not involve Electronics, and there is thus no basis for extending the stay to Electronics.

Judge Carter's findings likewise underscore that any success SDI may have in collecting on its patent infringement judgment would not extinguish claims the Trustee has against Kennett

Entry No. 563 at 7 n.3.)

and Hamilton. Judge Carter's decision that Kennett and Hamilton were alter egos of Teknek and Electronics was not premised on any transfers to the individuals. Instead, Judge Carter noted that "The assets of both Defendants [Teknek and Electronics] were transferred to Teknek Holdings. As a result, both Defendants are now insolvent." (00-cv-135 Docket Entry No. 486 at 2.) In other words, the facts underlying any claims the Trustee has against those individuals are wholly irrelevant to the collection proceedings. In addition, there has been no showing by the parties or finding by the court that Kennett and/or Hamilton would be incapable of satisfying their debts to both SDI and, if any, to Teknek. Therefore, the bankruptcy court had no jurisdiction to enjoin collection proceedings against these two individuals.

### c. Ability to Satisfy the Judgment

That the judgment debtors may be liable to both SDI and Teknek raises the question of whether the judgment debtors will be able to satisfy its potential debts to both SDI and the Teknek estate. If not, the Trustee might have a real claim that collection by SDI would affect the Teknek estate. This court is unaware, however, of any argument or evidence that the judgment debtors lack the resources to satisfy both their debt to SDI and their alleged debt to the estate. In the absence of such a finding, SDI's efforts to collect on its patent infringement judgment have no impact on the bankruptcy proceedings. Moreover, the court is not certain that a bankruptcy court may stay a district court's proceedings simply to ensure that the estate at issue is able to collect on any claims it has brought. *Cf. In re Combustion Eng'g*, 391 F.3d at 225 (section 105 jurisdiction cannot be used to create a "bigger pot" of assets for all claimants in the absence of statutory bankruptcy jurisdiction). In addition, as noted above, in this case the Trustee has brought no claim directly against Holdings, so it would make little sense to declare administration of the bankruptcy estate "related to" collection of the patent infringement judgment.

### d.     Equities

Moreover, in the circumstances presented here, the equities counsel against the bankruptcy court's exercise of jurisdiction to enjoin the patent proceedings.  The judgment debtors have engaged in complicated machinations to avoid satisfying their debt to SDI. As discussed above, contempt sanctions have been imposed as a result, and both the Central District of California and Federal Circuit held that the infringer's behavior merited adding the alter egos it used to facilitate its fraudulent activity as judgment debtors.  Under similar circumstances, the Second Circuit has held:

> While we decline to define under what circumstances, if any, a bankruptcy court may properly exercise § 105 jurisdiction to issue a stay with respect to non-bankrupt co-defendants, it is clear that any such jurisdiction cannot extend to efforts made in bad faith by non-bankrupt co-defendants in order to escape from the liability imposed by an adverse district court judgment. And here the circumstances plainly attest to the defendants' bad faith. As the district court correctly noted, "the record makes abundantly clear that the defendants are engaging in frivolous and vexatious litigation, simultaneously filing pleadings and papers in numerous courts with the sole purpose to delay and frustrate the ability of Teachers to execute judgment with respect to the non-debtor individual defendants . . ."

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65-6 (2d Cir. 1986)

In *Teachers Insurance*, the plaintiffs prevailed on a breach of contract claim against a partnership and its three general partners in the Southern District of New York.  *Id.* at 62-3.  After the judgment was signed, the partnership filed for Chapter 11 bankruptcy in the Eastern District of California, and the bankruptcy court issued a temporary restraining order preventing plaintiffs from enforcing their judgment against the debtor and its three non-debtor general partners.  *Id.*  The debtor's trustee, whom the general partners had nominated, then sought to remove the breach of contract case to the Eastern District of California; the general partners appealed the judgment of the Southern District of New York to the Bankruptcy Appellate Panel of the Ninth Circuit (though it is not clear on what basis), to the Ninth Circuit (again, it is not clear how), and then to the Second

22

Circuit. *Id.* at 63. The Southern District of New York granted plaintiffs' motion to enjoin the partners from appealing its decision to any court other than the Second Circuit and granted other relief. *Id.* The general partners appealed this injunction, as well as the breach of contract judgment against them. *Id.* Here, as in *Teachers Insurance*, the debtor and affiliated entities have engaged in complicated machinations to avoid paying a judgment entered against them. Bankruptcy procedures cannot be used to achieve this end, and the bankruptcy court thus lacked jurisdiction.

The Trustee's attempts to distinguish *Teachers Insurance* are unavailing. The Trustee notes, first, that the injunction at issue here is being sought by an independent trustee for the benefit of the estate rather than the wrongdoers. (Levey Br. at 17.) But it appears to the court that the injunction benefits the wrongdoers and not the estate, as the estate's interest in recovering wrongful payments is not jeopardized if the injunction is lifted. The Trustee also asserts that the wrongdoers are attempting to pay the judgment rather than avoid it (*id.*), but that characterization is inconsistent with the record, including Judge Carter's ruling that assets were fraudulently transferred to avoid payment of that debt. Although there have been settlement efforts, they were ultimately unsuccessful and cannot, in any event, vest the bankruptcy court with jurisdiction it does not otherwise have. If anything, the objection to the bankruptcy court's jurisdiction is even stronger here than it was in *Teachers Insurance,* where the debtor had filed a Chapter 11 proceeding, requiring the court to consider the debtors' possible rehabilitation. 803 F.2d at 65. In a Chapter 7 bankruptcy case such as this one, rehabilitation is not at issue and the bankruptcy court's related-to jurisdiction should be more limited as a result. *Cf. Celotex*, 514 U.S. at 310 (1995). Thus, as the bankruptcy court failed to articulate how collection proceedings against Holdings in the patent infringement case would affect the judgment debtor's estate, it lacked jurisdiction to enjoin proceedings against Holdings.

### C.     Grant of Injunctive Relief

Even if the bankruptcy court had jurisdiction to enjoin attempts to collect from Holdings, Kennett, and Hamilton, the question of whether injunctive relief is appropriate would remain.  A section 105 preliminary injunction should be granted where a party demonstrates a likelihood of success on the merits of its claim that proceedings will defeat or impair the bankruptcy court's jurisdiction and that the injunction will not harm the public interest.  *Fisher*, 155 F.3d at 882.  As explained below, the court concludes that neither element has been met in this case.

### 1.     Likelihood of Success on the Merits

The bankruptcy court concluded that the collection proceedings in the Central District of California were likely to impair the bankruptcy estate and the bankruptcy court's jurisdiction.  In support of this finding, Judge Cox held that the Teknek Trustee was likely to succeed on the merits because the Trustee is the appropriate litigant to pursue the debtor's alter ego claims on behalf of its debtors.  (07-ap-583 Docket Entry No. 14 ¶ Y.)  The bankruptcy court also concluded that SDI's purported collection claims are "claims of the Estate," and that there are significantly overlapping issues between SDI's collection claims and the Trustee's claims in the adversary proceedings.  (*Id.* ¶¶ Z-AA.)  In addition, the bankruptcy court found that the injunction would advance the public interest.  (*Id.* ¶¶ BB-CC.)  As explained here, this court does not agree that the Trustee has satisfied this two-part test.

First, the court can discern no reason why SDI's recovery of its patent infringement judgment would preclude the Teknek Trustee from recovering the value of the allegedly fraudulent transfers.  Without any evidentiary support, the court cannot conclude that Holdings is incapable of satisfying its debts to both SDI and Teknek, and satisfaction of one will not extinguish the other.  To the extent the satisfaction of all of Holdings' outstanding debts does become a problem, the

proceedings may be disaggregated. "In cases involving multiple parties or multiple claims, the courts have 'disaggregated' the proceedings so that claims against co-defendants who are not under the protection of the bankruptcy court may go forward, as well as claims for which stay is unnecessary to protect the debtor." *Seiko Epson*, 190 F.3d at 1364. In *Seiko Epson*, the defendant was accused of a number of wrongs, including patent infringement. 190 F.3d at 1362. The district court issued an injunction on the patent infringement issue, which the Federal Circuit affirmed. *Id.* Several months later, and after plaintiffs sought to add counts of infringement pertaining to three additional patents, the district court declared four patents unenforceable. *Id.* As a result, it refused to expand the injunction to one of those patents and dissolved the portion of the injunction that related to the other three unenforceable patents. *Id.* Plaintiffs appealed the issues of patent unenforceability and invalidity to the Federal Circuit, while defendants appealed orders holding them in contempt for violating the preliminary injunction. *Id.* at 1363. Four days after oral arguments were held, defendant Nu-Kote International, Inc. filed for Chapter 11 bankruptcy. *Id.* The parties then disputed whether the automatic stay would extend to defendant Pelikan Produktions, A.G., a non-debtor. *Id.* The Federal Circuit held that "in all events Pelikan is not entitled to the benefits" of the automatic stay. *Id.* at 1364.[8] While the Trustee attempts to distinguish *Seiko* on the ground that this case involves property of the bankruptcy estate (Levey Br. at 17-18), the court finds that SDI's claims are patent infringement, not alter ego, claims and therefore not property of the Teknek estate.

At least one court in this district has affirmed that disaggregation is proper in certain cases:

All proceedings in a single case are not lumped together for purposes of automatic

---

[8]     The court also held that the debtor may not violate previously-issued orders merely because appeal from those orders is stayed. *Seiko Epson*, 190 F.3d at 1364. Teknek is cautioned that this applies to its own future activities.

stay analysis. . . . Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, cross-claims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.

*In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 975 (N.D. Ill. 1992) (Easterbrook, J.) (citation omitted). Thus, the court held that the patent litigation against the non-debtor co-defendant would go forward without the debtor. *Id.* at 977. *See also Snavely v. Miller (In re Miller)*, 397 F.3d 726, 731 (9th Cir. 2005) (same). Although *Mahurkar* and *Snavely* both consider automatic stays rather than a stay entered pursuant to section 105, the logic is compelling in this case. The non-debtors are not entitled to the benefits of the Bankruptcy Code, as they are not in bankruptcy proceedings. In addition, the claims against them can be disaggregated from the claims against the debtor. As such, there is no reason to enjoin proceedings against the non-debtors.

With regard to the Trustee's likelihood of success on the merits, it is also notable to consider the extraordinary nature of the remedy sought in this case. Essentially, the Bankruptcy Court has enjoined collection proceedings against the debtor and related non-debtors, including staying pending contempt proceedings. This is not an exercise of jurisdiction that should be lightly taken, as *Mahurkar* makes clear. In *Mahurkar*, the plaintiff had patent infringement claims against two parties. 140 B.R. at 970. The patent dispute was before the District Court for the Northern District of Illinois, while the bankruptcy filed by one of the two patent infringement defendants was before the Bankruptcy Court for the District of Delaware. *Id.* The bankruptcy court enjoined the patent proceedings while a hearing was scheduled before Judge Easterbrook. *Id.* at 972. In other words, the bankruptcy court effectively "instructed counsel to remain silent during the hearing scheduled in this court." *Id.*

"On learning of this preposterous order," the Northern District entered an order making clear that the bankruptcy court's attempt to override an order he had previously issued was "ineffectual." *Mahurkar*, 140 B.R. at 972. The court therefore required the parties to appear at his hearing and participate in oral arguments. *Id.* As Judge Easterbrook, sitting by designation, found:

> For one federal court to issue an injunction forbidding litigation in another is extraordinary, given principles of comity among coordinate tribunals. *E.g., Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952); *cf. Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942). For a bankruptcy judge to issue an injunction with the effect of preempting resolution of a pending motion in a district court is unheard-of. Well, perhaps not *un*-heard of. I found one case in which a bankruptcy court did so, and the district judge brushed the order aside in derision, treating the order as so patently unauthorized that no further explanation was warranted. *Lower Brule Construction Co. v. Sheesley's Plumbing & Heating Co.*, 84 Bankr. 638, 644 (D.S.D. 1988).

*Id.* at 974. Ultimately, the court ruled that the "patent litigation is not a core proceeding by any stretch of the imagination, and I think it beyond cavil that I have authority to decide, for example, whether [plaintiff] is entitled to take discovery from former [debtor] employees that may be relevant to the action against [the non-debtor co-defendant.]" *Id.* at 974. *See also In re Receivership Estate of Indian Motorcycle Mfg.*, Civil Action No. 95-Z-777, 2002 WL 507543, at *3 (D. Colo. Feb. 28, 2002) (urging bankruptcy judge to reconsider as improper order enjoining and restraining receiver from filing any motions or papers with the district court and ordering receiver to bring before the district court matters for consideration and resolution).

Here, as in *Mahurkar*, the bankruptcy court has attempted to preempt resolution of pending motions (here, the contempt proceedings) in a district court. No extraordinary circumstances are present that would justify this exercise of jurisdiction, if jurisdiction does in fact exist. That *Mahurkar* involved an automatic stay rather than a section 105 injunction does not in any way diminish the impact of its ruling on this case. As the Trustee points out, the *Mahurkar* court drew a distinction between conduct that would affect the debtor's estate and conduct that would not. (Levey Br. at

19.)  Collection proceedings against non-debtors fall on the latter side of this line.  Following the *Mahurkar* rationale, this court concludes that the Trustee has no substantial likelihood of prevailing on the merits and obtaining a permanent injunction that would bar SDI from collecting its judgment against the non-debtor.

## 2. Public Interest

Having discussed at length the extreme remedy sought here, and the impact the injunction would have on comity between the bankruptcy courts and district courts, the court concludes that it does not serve the public interest.  The debtor in this case has avoided paying a judgment against it by setting up a new entity and transferring its assets to the entity, controlled by the same people who control the debtor.  In so doing, the debtor rendered itself insolvent and payment of its debt impossible.  Post-transfer, the debtor filed for bankruptcy, disclosing that 99% of its liabilities were owed to the infringee.  When the new entity, controlled by the same people who control the debtor, was made directly liable for the original debt, thereby thwarting the debtor's attempts to escape liability, the debtor then changed tactics.  The debtor now argued that it, rather than the infringee, had the right to recoup the assets that it fraudulently transferred.  In other words, the debtor here seeks to shield itself from the consequences of its own wrongful conduct by invoking an alter ego claim.  *See Lumpkin v. Envirodyne Indus.*, 933 F.2d 449, 460 (7th Cir. 1991) ("The alter ego doctrine is a sword, not a shield, the basis for a cause of action, not a defense.").  That the Teknek Trustee, rather than Kennett or Hamilton, now controls Teknek's assets does not disturb the fundamental inequity of permitting Teknek to evade its liability and force SDI to jump through hoops to collect on its judgment.

## CONCLUSION

The preliminary injunction entered by the bankruptcy court is hereby vacated.

ENTER:

Dated: December 21, 2007

REBECCA R. PALLMEYER
United States District Judge